Matter of New York State Off. of Mental Health v Marco G. (2018 NY Slip Op 06998)





Matter of New York State Off. of Mental Health v Marco G.


2018 NY Slip Op 06998


Decided on October 18, 2018


Appellate Division, First Department


Gesmer, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 18, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.
Rosalyn H. Richter
Sallie Manzanet-Daniels
Peter Tom
Ellen Gesmer, JJ.


530245/99 

[*1]In re New York State Office of Mental Health, Petitioner-Respondent,
v
Marco G., Respondent-Appellant. Eric Gonzalez, Kings County District Attorney, Nonparty Respondent.



Respondent Marco G. appeals from the amended order of the
Supreme Court, New York County (Lisa A. Sokoloff, J.), entered on or about January 23, 2018, which denied his petition pursuant to Mental Hygiene Law § 9.35 and CPL 330.20(16) for a jury rehearing and review, and from the order of the same court (Kelly O'Neill Levy, J.), entered October 5, 2017, recommitting respondent from non-secure confinement to confinement in a secure facility.




Marvin Bernstein, Mental Hygiene Legal Service, New York (Diane Goldstein Temkin and Sadie Zea Ishee of counsel), for appellant.
Barbara D. Underwood, Attorney General, New York (Linda Fang and Steven C. Wu of counsel), for New York State Office of Mental Health, respondent.
Eric Gonzalez, District Attorney, Brooklyn (Avshalom Yotam, Leonard Joblove, Ann Bordley and David C. Kelly of counsel) for Eric Gonzalez, respondent.



GESMER, J.


After a criminal defendant is found not responsible by reason of mental disease or defect, the court must hold an initial hearing, and then successive hearings, to determine if the defendant has a dangerous mental disorder or is mentally ill, and must, therefore, be committed to the custody of the Commissioner of Mental Health (CPL 330.20). A defendant who is dissatisfied with an order resulting from such a hearing may request, as of right, a rehearing and review de novo before a jury (CPL 330.20[16]; Mental Hygiene Law § 9.35; Matter of Norman D., 3 NY3d [*2]150, 155 [2004]). In this case, respondent Marco G. (defendant) made such a request and the motion court denied it, wrongfully.
The Office of Mental Health (OMH) and the District Attorney argue that we should not consider the merits of defendant's appeal because defendant has no right to appeal under CPL 330.20. We reject that argument. The Court of Appeals has held that retention orders affect a "basic liberty issue" (Matter of Jamie R. v Consilvio, 6 NY3d 138, 142 [2006]). Consequently, the order being appealed from affects a "substantial right" and is properly before us as of right under CPLR 5701(a)(2)(v). Accordingly, we consider the merits of the appeal and reverse the trial court.
Background
In 1998, after a nonjury trial for multiple sex offenses and attempted assault, defendant was found not responsible by reason of mental disease or defect. As is required by statute, the court then ordered an examination of defendant to evaluate his mental condition (see CPL 330.20[2], [4], and [6]). After receiving a report, the court held a hearing pursuant to CPL 330.20(6) and found that defendant suffered from a "dangerous mental disorder."[FN1] As a result of this finding, defendant was committed to the custody of the Commissioner of Mental Health for confinement in a secure facility for a period of six months and [FN2] was committed to Kirby Forensic Psychiatric Center, a secure facility operated by OMH.
After his initial commitment, the court held the required periodic hearings on defendant's mental condition. After a hearing in 2013, Supreme Court, New York County determined that defendant was "mentally ill" but no longer suffered from a "dangerous mental disorder." Based on that, defendant was transferred from Kirby Psychiatric Center to Manhattan Psychiatric Center (MPC), a non-secure facility (see CPL 330.20[11]).
On or about November 10, 2015, OMH applied, under CPL 330.20(14), for a recommitment order, seeking a determination that defendant had a dangerous mental disorder and should be confined in a secure facility for a period of six months. OMH supported its application with an updated forensic report, which in return referred to alleged incidents of [*3]misconduct by defendant.
Supreme Court held a nine day hearing over a span of approximately seven months on OMH's application, and issued its decision on September 29, 2017. At the hearing, defendant's expert testified, inter alia, "[W]e are really doing the hearing only about, does [defendant] stay in a civil hospital or is he going to the maximum security." During summation, defendant's counsel stated, inter alia, "[Defendant is] locked up. We are not releasing him to the community . . . . He's not going into the community. He is at Manhattan Psych. . . .He's staying in a locked facility . . . . [Defendant] is dangerous enough to be held in MPC, granted, but not to be sent to a secure facility . . . ."
In its decision, Supreme Court, New York County, found that OMH had established that defendant suffered from a dangerous mental disorder in that he had a mental illness and a level of dangerousness to himself or others which warranted secure
confinement. Therefore, it ordered that he be recommitted to a secure facility for a term of six months.
By order to show cause dated October 5, 2017, defendant made a request for a trial de novo before a jury "on the question of the alleged mental illness and need for retention of the Defendant"[FN3] pursuant to CPL 330.20(16). Under that statute, the judge to whom the application is made is required to convene a jury and try the question raised.[FN4]
OMH cross-moved to dismiss defendant's petition. OMH argued that rehearing and review is only available as to the "basic liberty issue" of whether a defendant should be confined at all, citing Jamie R. (6 NY3d at 152-153). It then argued that the question of whether defendant should be confined at all was not an issue, since both his counsel and his expert had conceded at the hearing that defendant was mentally ill and should be maintained in a locked facility. Essentially, OMH argued that defendant had disputed only whether he was dangerous but not whether he was mentally ill.
In reply, defendant's counsel stated that defendant was seeking jury review of the underlying question of his mental illness. He argued that he was entitled, under the statute and the Federal and State Constitutions, to a jury review of the "basic liberty issue" of whether he was mentally ill and could be held in custody at all.
In a decision and order dated January 19, 2018, the motion court denied defendant's petition. The motion court held defendant may not seek rehearing and review to challenge his track designation. Defendant promptly filed a notice of appeal.
During oral argument, the parties were granted leave to submit post-argument submissions to address two issues: 1) whether defendant's appeal is moot; and 2) the relevance of the Second Department's recent decision in People v Charles (162 AD3d 125 [2d Dept 2018], lv denied __ NY3d __, 2018 NY Slip Op 83094 [2018]) to the issue of whether the motion court's order is appealable.
Analysis
"Under CPL 330.20, an insanity acquittee dissatisfied with a commitment, recommitment or retention determination has two avenues of redress: a permissive appeal under CPL 330.20(21) or a rehearing and review proceeding under CPL 330.20(16)" (Jamie R., 6 NY3d at 148 [footnote omitted]). These two procedural options are "not coextensive" (Norman D., 3 NY3d at 155; see also CPL 330.20[21][a][ii]), and they serve different purposes. As is the case in most appeals, a court hearing an appeal under CPL 330.20(21) conducts "a review of the lower court's determination based on the record at the time of the earlier proceeding" (Norman D., 3 NY3d at 156). By contrast, a rehearing and review under CPL 330.20(16) is a "second trial-level proceeding" (Jamie R., 6 NY3d at 141), in which the trier of fact reviews "the earlier record as well as any new evidence presented by the parties concerning the acquittee's mental status at the time of the rehearing and review" (Norman D., 3 NY3d at 155). This second-level trial is de novo (see Norman D., 3 NY3d at 155 n 2). Since the only issue to be decided at a rehearing and review is the defendant's alleged "mental illness and the need for retention" (see CPL 330.20[16]; MHL § 9.35; see also Jamie R., 6 NY3d at 150), it provides "a second chance to obtain release from OMH custody in the event of an erroneous deprivation of liberty" (Jamie R., 6 NY3d at 153). Accordingly, other issues, such as a defendant's track status or the issue of whether a defendant is suffering a dangerous mental disorder, cannot be raised on a rehearing and review but only on appeal (see Jamie R., 6 NY3d at 154; Norman D., 3 NY3d at 157).
Here, defendant limited his application for a jury trial to those issues properly considered at a rehearing and review: the issues of his alleged mental illness and the need for retention. Moreover, his application, made within 30 days of the recommitment order, was timely. Accordingly, defendant's application complied with the core requirements of CPL 330.20(16). Respondents do not dispute this, but argue instead that defendant, through his expert and his counsel, conceded his mental illness, and therefore waived his right to seek rehearing and review on those issues. They further raise preliminary procedural issues as a bar to our consideration of these issues, which we address first.
I. Mootness
We reject OMH's argument that defendant's appeal should be dismissed as moot. This case satisfies the exception to the mootness doctrine because there is "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues" (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980]). Commitment and retention proceedings generally involve orders of short duration, which typically evade review (see Mental Hygiene Legal Servs. v Ford, 92 NY2d 500, 505-506 [1998]; Matter of State of N.Y. ex rel. Giffen v Hoffman, 161 AD3d 512 [1st Dept 2018])[FN5]. Moreover, the issue before us is substantial, as it requires us to decide whether [*4]statements by defendant's counsel and his expert could operate to deprive a defendant of his statutory right to demand a jury trial de novo on the "basic liberty issue" of whether he can be confined (see Jamie R., 6 NY3d at 154). II. Appealability
We hold that defendant's appeal is properly before us under CPLR 5701(2)(a)(v) as an appeal as of right from an order affecting a substantial right.
"Appealability to the appellate division is broad" (Richard C. Reilly, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5701:1), and appeals taken in CPL 330.20 proceedings are "civil in nature" (see CPL 330.20[21][c]; People v Escobar, 61 NY2d 431, 437-438 [1984]). Under CPLR 5701(a)(2)(v), an appeal to this Court lies as of right where an order of the Supreme Court entered upon notice "affects a substantial right."
The Court of Appeals has been clear that the de novo jury trial provided for under CPL 330.20)16( protects a fundamental liberty interest )see Jamie R., 6 NY3d at 152). As it explained in Jamie R., rehearing and review is authorized only for retention, commitment and recommitment orders which have in common "the basic liberty issue of whether a patient should be held in OMH custody" (id. at 152—53). Accordingly, there can be no serious dispute that the order of the motion court, which denied defendant the opportunity to present his case before a jury, as provided for under CPL 330.20(16), affected a substantial right.[FN6]
In reaching this result, we adopt the analysis laid out by our sister court in People v Charles (162 AD3d 125 [2d Dept 2018], lv denied __ NY3d __, 2018 NY Slip Op 83094 [2018]). In Charles, the defendant's petition for a downward modification of his Sex Offender Registration Act (SORA) level was denied (id. at 132). The People argued that defendant could not appeal, since the relevant statute did not give him the right to do so (Correction Law § 168-o[2]).
The Second Department held that the appeal was properly before it, as one taken as of right under CPLR 5701(a)(2)(v), even though the applicable statute, like the one at issue here, was silent as to defendant's right to appeal (Charles, 162 AD3d 125). As the Second Department explained, "Correction Law § 168-o(2) does not diminish, detract, or disturb this Court's jurisdiction to consider the instant appeal under CPLR 5701(a)," and "[w]e will not read Correction Law § 168-o(2) as curtailing this Court's jurisdiction to entertain an appeal under CPLR 5701(a), especially where, as here, there are serious due process implications" (id. at 138), noting that a SORA determination "undeniably ha[s] a profound impact on a defendant's liberty interest . . ." (id. [internal quotation marks omitted]).
Since the motion court's order affected a substantial right of defendant, we hold that his appeal is [*5]properly before us as one taken as of right under CPLR 5701(a)(2)(v).
OMH and the District Attorney argue that, since CPL 330.20(21) does not specifically state that a defendant may appeal from an order denying an application for rehearing and review, this Court may not hear defendant's appeal [FN7]. Their analysis is based on an excessively narrow view of our jurisdiction.
Notably, they do not cite to any case which holds that a defendant does not have an appeal as of right under CPLR 5701(a)(2)(v) to this Court from an order denying an application for rehearing and review [FN8]. In fact, it may well be that the statute is silent as to the denial of a rehearing because the legislature never contemplated that a defendant would be denied a rehearing to which the statute gives him an automatic right. Certainly, if a statute confers an absolute right to a hearing, we should permit an appeal from an order denying such a hearing.
Accordingly, where, as here, a fundamental liberty interest is clearly implicated, and the relevant statute and case law do not explicitly preclude us from invoking our jurisdiction under CPLR 5701(a)(2)(v), we should not "close the doors" of this Court to defendant (see Charles, 162 AD3d at 140).
III. Merits
On the merits, we hold that defendant did not waive his right to seek rehearing and review by any statements made by his counsel or his expert at the underlying recommitment hearing. In analyzing this claim, we must keep in mind the instruction by the Court of Appeals that rehearing and review "is not a rehearing in the conventional sense, but a de novo evidentiary proceeding, with the findings a snapshot of the acquittee's condition at that moment" (Norman D., 3 NY3d at 155 (emphasis added); accord Jamie R., 6 NY3d at 150). With that in mind, we reject the arguments of OMH and the District Attorney in favor of waiver for four reasons.
First, any statements made at the original hearing are not dispositive since a rehearing and review is a trial de novo. By its very definition, a "trial de novo" is "[a] new trial on the entire case - that is, on both questions of fact and issues of law - conducted as if there had been no trial in the first instance" (Black's Law Dictionary [10th ed. 2014], trial de novo). Indeed, among the two "avenues of redress" available to a CPL 330.20 defendant, the opportunity to proceed de [*6]novo is one of the key distinguishing factors between rehearing and review and a permissive appeal. Consequently, while the statements made by or on behalf of defendant might present issues for cross-examination at the jury trial, they cannot provide a basis for the court to deny the jury trial to which defendant is entitled.
Second, "[u]nlike an appellate proceeding, which reviews the record on appeal for error, a rehearing and review seeks to ascertain an insanity acquittee's mental condition at the time the rehearing and review is conducted" (Matter of Jamie R. v Consilvio, 17 AD3d 52, 59 [1st Dept 2005], affd 6 NY3d 138 [2006] [emphasis added]). Rehearing and review "guarantee[s] that the conditions of supervision originally imposed are appropriate at the time of the new proceeding" (Norman D., 3 NY3d at 155—56). While any statements made by or on behalf of defendant at the initial hearing might be relevant to defendant's mental status at the time of the rehearing, they cannot provide a basis for the court to deny defendant a jury trial to prove his mental condition at that later time.
Third, we have previously held that "[r]egardless of the [defendant's] own assessment, or a court's or doctor's opinion as to his mental health, he is entitled, under both the Federal and State Constitutions, to be provided with a jury trial on the question of involuntary commitment in a psychiatric hospital" (Richard H. v Consilvio, 6 AD3d 7, 15 [1st Dept 2004], lv denied 3 NY3d 601 [2004], abrogated on other grounds by Jamie R., 6 NY3d at 151 n 10). While Richard H. concerned a defendant's own testimony that he was mentally ill, there is no appreciable difference between a defendant's concessionary testimony being insufficient to waive or forfeit his right to a jury trial and counsel's litigation strategy itself.[FN9]
Finally, MHL § 9.35 states that a patient (or in this case, the defendant) "may waive the trial of the fact by a jury and consent in writing to trial of such fact by the court." As the Court of Appeals has stated, "[T]he decision whether to have a jury resolve the pertinent issues is vested in the patient, not the court" (Jamie R., 6 NY3d at 151 n 10). Accordingly, a holding that a defendant's right to a jury trial could be waived by his counsel's or his expert's statements at an underlying hearing is simply illogical. Under such a holding, a defendant would still need, pursuant to MHL § 9.35, to produce a written waiver in order to have a rehearing and review before the court in lieu of a jury. However, a defendant would be able to waive the right to rehearing and review and a jury trial itself, without any proceeding conducted to establish that this waiver was knowing and voluntary, based solely on his counsel's or his expert's statements at an underlying hearing. That is an untenable result, one which is inconsistent with our holding [*7]in Richard H., as well as the Court of Appeals' unequivocal directive that rehearing and review be conducted de novo.
Here, defendant timely expressed his dissatisfaction with a recommitment order that was based on a threshold finding that he had a mental illness. Once defendant met those core requirements, he was entitled to a de novo trial at which a jury would decide whether he was mentally ill based on the evidence then existing.
Accordingly, the amended order of the Supreme Court, New York County (Lisa A. Sokoloff, J.), entered on or about January 23, 2018, which denied defendant insanity acquittee's petition pursuant to Mental Hygiene Law § 9.35 and CPL 330.20(16) for a jury rehearing and review, and the order of the same court (Kelly O'Neill Levy, J.), entered October 5, 2017, recommitting him from non-secure confinement to confinement in a secure facility, should be reversed, on the law, without costs, and the petition granted.
All concur.
Amended order, Supreme Court, New York County (Lisa A. Sokoloff, J.), entered on or about January 23, 2018, and order, same court (Kelly O'Neill Levy, J.), entered October 5, 2017, reversed, on the law, without costs, and the petition granted.
Opinion by Gesmer, J. All concur.
Renwick, J.P., Richter, Manzanet-Daniels, Tom, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: OCTOBER 18, 2018
CLERK



Footnotes

Footnote 1: In this context, " [d]angerous mental disorder' means(i) that [the] defendant currently suffers from a mental illness' as that term is defined in subdivision twenty of section 1.03 of the Mental Hygiene Law, and (ii) that because of such condition he currently constitutes a physical danger to himself or others" (CPL 330.20[1][c]).

Footnote 2: CPL 330.20 defines three categories of defendants and an appropriate level of confinement for each. A defendant who suffers from a dangerous mental disorder is committed to secure confinement (Jamie R., 6 NY3d at 142; CPL 330.20[6]. A defendant who is "mentally ill" but does not have a dangerous mental disorder is committed to non-secure confinement under an order of conditions (Jamie R., 6 NY3d at 142-143; CPL 330.20[7]). A defendant who is neither "mentally ill" nor suffering from a "dangerous mental disorder" is discharged, either unconditionally or under an order of conditions (Jamie R., 6 NY3d at 143; CPL 330.20[7]). The three levels are referred to as tracks one, two and three respectively. The "track" language is not found in the statute but in the accompanying Law Revision Commission report (Jamie R., 6 NY3d at 142 n 3).

Footnote 3: Defendant also sought interim relief, but that is not an issue on appeal.

Footnote 4: Under CPL 330.20(16), "[a]ny defendant who is in the custody of the commissioner pursuant to a commitment order, a retention order, or a recommitment order, if dissatisfied with such order, may, within thirty days after the making of such order, obtain a rehearing and review of the proceedings and of such order in accordance with the provisions of section 9.35 . . . of the mental hygiene law." Mental Hygiene Law § 9.35 provides, as relevant here, "If a person who has been denied release or whose retention, continued retention, or transfer and continued retention has been authorized pursuant to this article, . . . be dissatisfied with any such order he may, within thirty days after the making of any such order, obtain a rehearing and a review of the proceedings already had and of such order upon a petition to a justice of the supreme court other than the judge or justice presiding over the court making such order. Such justice shall cause a jury to be summoned and shall try the question of the mental illness and the need for retention of the patient so authorized to be retained" (emphasis added).

Footnote 5: Today's holding is not inconsistent with our decision in Matter of Crumpley v Wack (212 AD2d 299 [1st Dept 1999]). In that case, we declined to apply an exception to the mootness doctrine where, the defendant's "tardiness" in his motion practice contributed to the underlying order's expiration (see Crumpley, 212 AD2d at 303). Here, by contrast, defendant exhibited no tardiness in the litigation of this case. 

Footnote 6: For this reason, the District Attorney's citation in his post-argument submission to Matter of Allen B. v Sproat (23 NY3d 364, 376 [2014]) is unavailing. In Allen B., the Court of Appeals noted that CPL 330.20(21)(a)(ii) does not permit a defendant to appeal from an order of conditions, which insulates from review a prophylactic order imposed by the supervising judge (id.). However, as the Court of Appeals explained in Jamie R., an order of conditions does not relate to the "liberty question of whether inpatient treatment is warranted but to specific aspects of patient treatment" (see Jamie R., 6 NY3d at 152). Accordingly, the appealability of an order of conditions is not comparable to the appealability of an order denying a defendant's application for rehearing and review. The former is not related to a liberty interest while the latter clearly is.

Footnote 7: CPL 330.20(21) states that a defendant "may take an appeal to an intermediate appellate court by permission of the intermediate appellate court" as follows:
"a defendant, or the mental hygiene legal service on his or her behalf, may appeal from any commitment order, retention order, recommitment order, or, if the defendant has obtained a rehearing and review of any such order pursuant to subdivision sixteen of this section, from an order, not otherwise appealable as of right, issued in accordance with the provisions of section 9.35 or 15.35 of the mental hygiene law authorizing continued retention under the original order, provided, however, that a defendant who takes an appeal from a commitment order, retention order, or recommitment order may not subsequently obtain a rehearing and review of such order pursuant to subdivision sixteen of this section" (CPL § 330.20[21][a][ii]).

Footnote 8: OMH and the District Attorney cite only to Matter of Gushea (134 AD2d 965 [4th Dept 1987]), a one-sentence memorandum decision that is not binding on us and does not address the critical issue before us.

Footnote 9: To the extent we stated in Richard H. that a jury could act in an advisory capacity on the issue of dangerousness (see Richard H., 6 AD3d at 14), that part of our decision was unquestionably abrogated by Jamie R. (6 NY3d at 151 n 10). However, contrary to the suggestion of the District Attorney, Jamie R. in no way disturbed our conclusion that the defendant in Richard H. did not waive his right to rehearing and review based on his testimony at the underlying hearing that he was mentally ill. Our conclusion on that issue did not rely on our now-abrogated statement about a jury's ability to act in an advisory capacity (see Richard H., 6 AD3d at 15 ["We reject the contention that because petitioner admitted that he was mentally ill, the jury's review and rehearing should not have been conducted"]). Indeed, we have continued to cite Richard H. for its other, still valid, points of law (see e.g. Matter of New York State Off. Of Mental Health v Joseph C., 126 AD3d 477 [1st Dept 2015] [citing Richard H. on the issue of the sufficiency of the evidence establishing dangerous mental disorder]).